Matter of Maldonado v Doria, Inc. (2021 NY Slip Op 01307)





Matter of Maldonado v Doria, Inc.


2021 NY Slip Op 01307


Decided on March 4, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 4, 2021

531672

[*1]In the Matter of the Claim of Cesar Maldonado, Claimant,
v
Doria, Inc., et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date: January 14, 2021

Before: Garry, P.J., Lynch, Clark, Aarons and Colangelo, JJ.


Cipriani & Werner, PC, Iselin, New Jersey (Marc Neuman of counsel), for appellants.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for respondent.



Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed December 26, 2019, which amended the claim to include causally-related cardiac arrest.
On October 1, 2018, claimant injured his left ankle while descending a staircase at work. He was diagnosed with a sprained left ankle and was fitted with a boot and elastic supports. As a result, he applied for workers' compensation benefits and his claim was established for a left ankle injury. On November 4, 2018, while he was at home, claimant experienced recurring syncopal episodes, shortness of breath and chest pain, and was taken to the hospital. He was diagnosed with a pulmonary embolism (hereinafter the PE) and deep vein thrombosis (hereinafter the DVT) of the popliteal vein of the left lower extremity, and remained in the hospital for 22 days. His claim was later amended to include the PE and the DVT, which were found to be causally related to the treatment for his initial injury.
Thereafter, additional proceedings were conducted to determine whether the claim should be further amended to include major depression, posttraumatic stress disorder and cardiac arrest. After considering additional medical evidence and testimony, a Workers' Compensation Law Judge (hereinafter WCLJ) amended the claim to include these conditions. The workers' compensation carrier for the employer took exception to the amendment of the claim to include cardiac arrest, and filed an application with the Workers' Compensation Board for review of this part of the WCLJ's decision, contending that there was no medical evidence to support the claim for cardiac arrest. A panel of the Board concluded that there was medical evidence to support the amendment of the claim, and upheld the WCLJ's decision. This appeal by the employer and the carrier (hereinafter collectively referred to as the carrier) ensued.
"A claimant bears the burden of establishing, by competent medical evidence, a causal relationship between an injury and his or her employment" (Matter of Cartafalsa v Zurich Am. Ins. Co., 175 AD3d 1762, 1763 [2019] [internal quotation marks and citations omitted]; see Matter of Issayou v Issayuou Inc., 174 AD3d 1277, 1277-1278 [2019], lv denied 34 NY3d 909 [2020]). "In reviewing a Board decision concerning the medical question of causality, we will look to the record to determine whether, read as a totality, it contains substantial and adequate opinion evidence to support the Board's finding" (Matter of Rossi v Albert Pearlman Inc., 188 AD3d 1362, 1363 [2020] [internal quotation marks and citations omitted]; see Matter of Gallo v Village of Bronxville Police Dept., 120 AD3d 849, 850 [2014]).
The Board relied upon the medical testimony of Nathan Rothman and Ali Eray Guy. Rothman, a pulmonologist, examined claimant, who provided Rothman with a history of the October 2018 and November 2018 events. As to the November 2018 event, claimant informed Rothman that he felt "dizzy" with shortness of breath, that he [*2]passed out while at home, and that his significant other performed resuscitation prior to the ambulance's arrival. Rothman's narrative report indicated that claimant "had one or more additional cardiac arrest[s]," and concluded that claimant had "several cardiac arrests, any of which could have been fatal."[FN1]
Guy, a specialist in physical medicine and rehabilitation, examined claimant in February 2019 and reviewed his medical records, including Rothman's evaluation. He testified and opined that claimant had suffered cardiac arrests that were causally-related to the accident of record. Guy described the medical process, stating that an embolus causes blockages in the circulatory system, resulting in low blood pressure, passing out and cardiac arrest.
The Board also referenced the testimony and report of Monroe Karetzky, a pulmonologist, who examined claimant on behalf of the carrier and indicated that claimant provided the history of cardiac arrest. Karetzky further stated that cardiac arrest "wasn't present in the records," distinguishing "syncopal episodes" from "cardiac arrest." The Board found his testimony to be in variance with his report, finding that he "attempted to backtrack" on the opinion set forth therein. Upon review, we likewise note the initial determination within his report, specifically that "[t]he DVT, [the PE] and subsequent cardiac arrest are causally related to the sprain."
The central assertion upon appeal is that "cardiac arrest" must be narrowly defined, as synonymous with death, i.e., where the heart stops beating and death immediately follows absent a restarting of the heart by medical personnel. At the hearing, the WCLJ set forth a broader definition, defining the term as a "sudden loss of blood flow resulting from the failure of the heart to effectively pump. Signs include loss of consciousness and abnormal or absent breathing." Although the carrier cites to and relies upon several medical authorities in the brief, we do not find the narrow definition well supported within the record medical testimony. In short, there is no substantial basis upon which to find that the medical experts upon whom the Board relied had adopted — or even fully considered — the narrow definition that the carrier promotes.[FN2] Instead, the medical records and testimony described a "cardiac arrest," and the medical experts were not presented with the distinction that the carrier wishes this Court to draw.
There is, in contrast, competent medical evidence in the record before us to support the Board's finding that claimant suffered cardiac issues and problems, and required significant related medical treatment directly arising from the DVT and the PE, which are both, in turn, concededly directly related to his underlying injury (see Matter of White v House, 147 AD3d 1173, 1174-1175 [2017]). Accordingly, we reject application of the narrow definition proffered by the carrier on appeal, and affirm the Board's determination regarding [*3]the causal relation of claimant's cardiac arrest to the underlying injury, a determination which we find to be supported by substantial evidence (see Matter of Kotok v Victoria's Secret, 181 AD3d 1146, 1148 [2020]; Matter of Ellis v First Student, Inc., 174 AD3d 1243, 1245 [2019]).
Lynch, Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: Although not referenced in the medical testimony, the hospital records reported that claimant's "in the field initial EKG [included] abnormalities . . . so [claimant was] sent to cardiac room."

Footnote 2: It even appears possible that the carrier's expert, Karetzky, may not have been utilizing a narrow definition at the time of rendering his report, although he did later espouse a narrow view of the term in his testimony. Even then, he distinguished "syncopal episodes" from "cardiac arrest," without ever directly addressing whether what may be commonly referenced or understood to be a "heart attack" might also be deemed to constitute "cardiac arrest." In any event, the Board was free to resolve the conflicting medical opinions and testimony (see Matter of Granville v Town of Hamburg, 136 AD3d 1254, 1256 [2016]).